UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NGHIA KHOI HOANG, | Case No.  1:26-cv-04023-JLT-CDB (HC) |
| Petitioner, | FINDINGS AND RECOMMENDATIONS TO GRANT PETITION FOR WRIT OF HABEAS CORPUS (A-Number 221 390 042) |
| v. | |
| CHRISTOPHER CHESTNUT, *et al.*, | (Doc. 1) |
| Respondents. | **7-Day Objection Period** |

Petitioner Nghia Khoi Hoang, a federal immigration detainee proceeding by counsel, initiated this action on May 26, 2026, with the filing of a petition for writ of habeas corpus under 28 U.S.C. § 2241. (Doc. 1). That same day, Petitioner filed a motion for temporary restraining order ("TRO"). (Doc. 2). Petitioner is in the custody of Immigration and Customs Enforcement ("ICE") at the California City Detention Facility. (Doc. 1 at 2). Respondents are Christopher Chestnut, Warden or Facility Administrator of the California City Immigration Processing Center; Orestes Cruz, Acting Field Office Director for Enforcement and Removal Operations, San Francisco ICE Field Office; Todd M. Lyons, former Acting Director of ICE; David J. Venturella, current Acting Director of ICE; Markwayne Mullin, Secretary of the Department of Homeland Security ("DHS"); and Todd Blanche, Acting Attorney General of the United States. *Id.* at 1.

On June 22, 2026, Respondents filed an untimely response to the petition. (Doc. 9). Petitioner thereafter filed a reply. (Doc. 10). For the reasons set forth herein, the undersigned

1

recommends that Petitioner's petition for writ of habeas corpus be granted.

I.        **Relevant Background**

The relevant facts are drawn from the parties' filings. *See* (Docs. 1, 9).  Petitioner is a native and citizen of Vietnam.  He entered the United States near Otay Mesa, California, sometime in January 2025 and was detained on January 4, 2025; he has remained in the custody of DHS since that date.  Petitioner applied for asylum, withholding of removal, and protection under the United Nations Convention Against Torture.  On September 16, 2025, an immigration judge ("IJ") issued a written decision finding Petitioner established a credible fear given he "suffered past persecution by the Vietnamese government on account of his anti-government political opinion." (Doc. 1 at 5).  The IJ further found that "Vietnamese police beat, detained, interrogated, and repeatedly summoned Petitioner after he opposed the government's attempted seizure of family land and demolition of a church." *Id*.

The IJ "denied asylum under the regulatory asylum bar" and "granted Petitioner withholding of removal under INA § 241(b)(3)(A)."  The DHS did not appeal the decision. *Id.* Petitioner asserts that he has been detained, at the time of the filing of the petition, for approximately 16 months, and "more than six months after the [IJ] granted withholding of removal and the removal order became administratively final."  Petitioner alleges he has not received any bond hearing or individualized custody determination and, as withholding of removal bars his removal to Vietnam, DHS has not identified any third country willing to accept him. *Id.* at 6.  Petitioner attaches numerous exhibits to the petition, consisting of ICE and Executive Office for Immigration Review ("EOIR") documentation, the IJ's decision granting withholding and denying asylum, and Petitioner's Vietnamese law enforcement documents, passport, identity cards, and birth certificate. *See* (Doc. 1-2).

Respondents assert that asylum was denied on September 16, 2025, and Petitioner did not appeal.  Withholding of removal became administratively final on October 16, 2025.  Petitioner has been detained while DHS attempts to obtain travel documents.  Respondents concede that no third country has been identified for removal and state that Petitioner's passport is expired.  Respondents provide that "DHS is actively pursuing documents to rebut Petitioner's contention that there is no

good reason to believe that he will be removed in the reasonably foreseeable future." Respondents "acknowledge that Petitioner may be entitled to release because he has been detained for longer than six months" and because they "have been unable to provide evidence that he will be removed in the reasonably foreseeable future." Respondents attach to their response a DHS Record of Deportable/Inadmissible Alien form and the IJ's decision granting withholding and denying asylum. (Docs. 9-1, 9-2).

The Court takes judicial notice that Petitioner has no upcoming hearings and the EOIR's automated case database reflects Petitioner was granted withholding on September 16, 2025.[1]

## II.     Governing Authority

### A.     The Writ of Habeas Corpus

Writ of habeas corpus relief extends to a person in custody under the authority of the United States. *See* 28 U.S.C. § 2241. A district court considering an application for a writ of habeas corpus shall "award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto." 28 U.S.C. § 2243.

### B.     Removal of a Noncitizen

Relevant here is the legal background presented by another judge of this Court regarding detainment after a noncitizen is ordered removed, in *A.A.M. v. Andrews*, No. 1:25-cv-01514-DC-DMC (HC), 2026 WL 1099063 (E.D. Cal. Apr. 21, 2026), which the undersigned adopts herein:

> When the Government wants to remove a noncitizen, the normal path is through removal proceedings, which require an evidentiary hearing before an immigration judge. 8 U.S.C. § 1229(a). In the removal proceeding, the Immigration Judge determines both whether a noncitizen may be removed and to what country or countries he may be removed. 8 C.F.R. § 1240.12(d) ("When a respondent is ordered removed from the United States, the immigration judge shall identify a country, or countries in the

---

[1] *See* https://acis.eoir.justice.gov/en/caseInformation (last visited June 26, 2026, using Petitioner's A-Number and nationality); *Daniels-Hall v. National Edu. Ass'n*, 629 F.3d 992, 998-99 (9th Cir. 2010) ("It is appropriate to take judicial notice of this information, as it was made publicly available by government entities ... and neither party disputes the authenticity of the web sites or the accuracy of the information displayed [ ] therein."); *Argueta v. Walgreens Co.*, 760 F. Supp. 3d 1028, 1034 (E.D. Cal. 2024) (taking judicial notice of information on federal government agency's website).

alternative, to which the alien's removal may in the first instance be made, pursuant to [8 U.S.C. § 1231(b)(2)].") Section 1231(b)(2) requires that the immigration judge prioritize removal to countries as follows:

> (1) An alien shall be removed to the country of his choice (subparagraphs (A) to (C)), unless a condition eliminating that command is satisfied; (2) otherwise he shall be removed to the country of which he is a citizen (subparagraph (D)), unless a condition eliminating that command is satisfied; (3) otherwise he shall be removed to a country with which he has a lesser connection (subparagraph (E), clauses (i) to (vi), including the country of his birth (clause (iv))); or (4) if that is "impracticable, inadvisable, or impossible," he shall be removed to another country whose government will accept him (subparagraph (E), clause (vii)).

*Jama v. Immigr. and Customs Enf't*, 543 U.S. 335, 341, 125 S.Ct. 694, 160 L.Ed.2d 708 (2005) (citing 8 U.S.C. § 1231(b)(2)).

If the U.S. Department of Homeland Security (DHS) is "unable to remove the alien to the specified or alternative country or countries, the order of the immigration judge does not limit [DHS's authority] to remove the alien to any other country as permitted by [8 U.S.C. § 1231(b)]." 8 C.F.R. § 1240.12(d). Removal to countries identified outside of removal proceedings are referred to as "third country removals." Notwithstanding DHS's authority to effectuate third country removals, noncitizens may not be removed to countries where, as potentially relevant here, their "life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion," (referred to as "withholding of removal"), or where "it is more likely than not that [the noncitizen] would be tortured if removed to the proposed country of removal" (referred to as the "Convention Against Torture" (CAT)). 8 U.S.C. § 1231(b)(3)(A); 8 C.F.R. § 208.16. Both withholding of removal and the CAT provide mandatory protections from removal to the country or countries where the noncitizen is more than likely to be persecuted or tortured. 8 U.S.C. § 1231(b)(3)(A); 8 C.F.R. § 208.16.2 While DHS has the authority to remove a noncitizen to a country not identified in the final removal order, there is no statute or regulation providing a specific procedure to effectuate such a third country removal. *See Aden v. Nielsen*, 409 F. Supp. 3d 998, 1009 (W.D. Wash. 2019).

After a noncitizen is ordered removed, ICE "shall remove the alien from the United States within a period of 90 days ...." (the "removal period"). 8 U.S.C. § 1231(a)(1)(A). The removal period begins, as relevant here, on the "date the order of removal becomes

4

administratively final." *Id.* § 1231(a)(1)(B)(i). ICE is required to detain the noncitizen during the removal period. § 1231(a)(2). If the noncitizen is not removed during the removal period, ICE "may" continue to detain the noncitizen after the removal period if he falls into certain categories, including that he entered "the United States without being admitted or paroled," or arrived "in the United States at any time or place other than as designated by the Attorney General." §§ 1231(a)(6), 1182(a)(6)(A)(i). Although there is no explicit statutory limit to the period for which a noncitizen may be detained following the removal period, in *Zadvydas* the Supreme Court noted that a "statute permitting indefinite detention of an alien would raise a serious constitutional problem" under the Fifth Amendment Due Process Clause. *Zadvydas v. Davis*, 533 U.S. 678, 690, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001). Accordingly, the Supreme Court held that after a presumptively reasonable six-month period of post-removal period detention,

> once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior post-removal confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

*Id.* at 701.

*A.A.M.*, 2026 WL 1099063, at *3–5.

## III.   Exhaustion

### A.   Governing Authority

"Section 2241 … 'does not specifically require petitioners to exhaust direct appeals before filing petitions for habeas corpus.'" *Laing v. Ashcroft*, 370 F.3d 994, 997 (9th Cir. 2004) (citing *Castro-Cortez v. INS*, 239 F.3d 1037, 1047 (9th Cir. 2001)). The Ninth Circuit, however, requires that, "as a prudential matter, that habeas petitioners exhaust available judicial and administrative remedies before seeking relief under § 2241." *Castro-Cortez*, 239 F.3d at 1047 (citing *United States v. Pirro*, 104 F.3d 297, 299 (9th Cir. 1997)). "Under the doctrine of exhaustion, 'no one is

entitled to judicial relief for a supposed or threatened injury until the prescribed ... remedy has been exhausted.'" *Laing*, 370 F.3d at 997-98 (citing *McKart v. United States*, 395 U.S. 185, 193 (1969)). "Exhaustion can be either statutorily or judicially required.  If exhaustion is required by statute, it may be mandatory and jurisdictional, but courts have discretion to waive a prudential requirement." *Id.* at 998 (citing *El Rescate Legal Servs., Inc. v. Executive Office of Immigration Review,* 959 F.2d 742, 746 (9th Cir. 1991); *Stratman v. Watt,* 656 F.2d 1321, 1325-26 (9th Cir. 1981)).  "Although courts have discretion to waive the exhaustion requirement when it is prudentially required, this discretion is not unfettered…. Lower courts … [must] first determin[e whether] the exhaustion requirement has been satisfied or properly waived." *Id.* (internal citations omitted); *see Murillo v. Mathews*, 588 F.2d 759, 762, n.8 (9th Cir. 1978) ("Although the application of the rule requiring exhaustion is not jurisdictional, but calls for the sound exercise of judicial discretion, it is not lightly to be disregarded.").

### B.      Analysis

Neither Petitioner nor Respondents address the issue of exhaustion.  *See* (Docs. 1, 9).

The Court finds that the prudential exhaustion requirement should be waived as it would be futile to seek release by administrative means given Respondents' position that detention is mandatory.  *See* (Doc. 9 at 2) (citing 8 U.S.C. § 1231).

## IV.      Discussion

Petitioner asserts three claims for relief: (1) unlawful detention under 8 U.S.C. § 1231(a)(6) and *Zadvydas*, 533 U.S. at 701; (2) violation of the Due Process Clause of the Fifth Amendment to the U.S. Constitution; and (3) arbitrary custody review and failure to follow governing regulations, including 8 C.F.R. §§ 241.4 and 241.13.  (Doc. 3 at 11).

As set forth below, because the undersigned finds that Petitioner's detention is not authorized by statute, and because Petitioner's other claims seek the same or similar relief (i.e., for immediate release and to enjoin Respondents from re-detaining Petitioner unless his re-detention is justified), the undersigned forbears from addressing Petitioner's other claims.

### A.      Likelihood of Removal

"An alien ordered removed [1] who is inadmissible ... [2] [or] removable [as a result of

6

violations of status requirements or entry conditions, violations of criminal law, or reasons of security or foreign policy] or [3] who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to [certain] terms of supervision ....” *Zadvydas*, 533 U.S. at 682 (quoting 8 U.S.C. § 1231(a)(6); alterations in original). “Applying the canon of constitutional avoidance because a statute permitting indefinite detention of an alien would raise a serious constitutional problem,’ the Supreme Court read an implicit limitation into § 1231(a)(6) and held that the statute limits an alien’s post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States.” *Vishal v. Chestnut*, 811 F. Supp. 3d 1179, 1183 (E.D. Cal. 2025) (citations and quotations omitted). “Thus, after a presumptively reasonable 6–month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing.” *Id*.

Petitioner has been detained since he entered the United States in January 2025 and has been granted withholding with an order of removal, both deemed administratively final on October 16, 2025. *See* (Doc. 9-2). Respondents assert that Petitioner is detained under 8 U.S.C. § 1231(a)(6) (*see* Doc. 9 at 1 and concede that Petitioner’s detention has exceeded the six-month period found presumptively reasonable in *Zadvydas*. *Id.* at 3. The Supreme Court held in *Zadvydas* that “once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing.” *Zadvydas*, 533 U.S. at 701.

Here, Petitioner has shown that there is no significant likelihood he will be removed in the reasonably foreseeable future. Petitioner provides that he has been detained since January 4, 2025. On September 16, 2025, he was ordered removed and granted withholding of removal. Petitioner cannot be removed to Vietnam due to the withholding of removal and DHS has not identified any third country willing to accept him. (Doc. 1 at 5-6). Petitioner asserts that “EOIR proceedings are complete, there are no future hearings, and no BIA appeal was received,” with Petitioner’s passport having expired on November 26, 2025. (Doc. 1-3 at 6). Respondents concede that they cannot

7

proffer any evidence to rebut Petitioner's showing that there is no significant likelihood of removal in the reasonably foreseeable future. *Id.* at 3.

In *Zadvydas*, the Supreme Court "rejected the argument that the noncitizen must show that deportation will prove impossible or show the absence of any prospect of removal—no matter how unlikely or unforeseeable." *Vishal*, 811 F. Supp. 3d at 1184 (citation and quotations omitted). As of the current date, Petitioner has been detained for over 15 months in total, and for approximately eight months after his order of removal and grant of withholding became administratively final. In that time, Respondents have failed to identify any third country willing to accept Petitioner. Indeed, Respondents concede that Petitioner's "expired passport has found to be more challenging than other cases similar to *Zadvydas*." (Doc. 9 at 3); *see Vishal*, 811 F. Supp. 3d at 1184 ("Here, Petitioner has been detained pursuant to § 1231(a) for seven months. The petition alleges that in that time, ICE has failed to identify a third country willing to accept Petitioner. Petitioner declares that he has never been asked to apply for any travel documents and that ICE has paper copies of his passport and identification card. Accordingly, the Court finds that Petitioner provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future.") (quotation omitted).

Numerous courts have granted relief to noncitizen petitioners under similar circumstances as those present here, finding the petitioner was not significantly likely to be removed in the reasonably foreseeable future. *See, e.g.*, *Hoac v. Becerra*, No. 2:25-cv-01740-DC-JDP, 2025 WL 1993771, at *4 (E.D. Cal. July 16, 2025) ("The fact that Respondents intend to complete a travel document request for Petitioner does not make it significantly likely he will be removed in the foreseeable future."); *Esmaeili v. Noem*, No. 26-cv-0203-GPC-JLB, 2026 WL 240661, at *4 (S.D. Cal. Jan. 29, 2026) ("Respondents have not presented any evidence that any country to which the government has reached out … has provided any indication that it might accept Petitioner … Additionally, beyond the simple fact that Respondents have asked these countries to accept Petitioner, Respondents have provided no information regarding the countries' likelihood to accept Petitioner, no estimate as to when the countries might respond, and no estimate as to how long after response removal might be effectuated."); *Azzo v. Noem*, No. 3:25-cv-03122-RBM-BJW, 2025 WL

8

3535208, at *4 (S.D. Cal. Dec. 10, 2025) ("Respondents have not even identified a third country to which they plan to remove Petitioner, much less submitted a travel document or provided an estimate for how long it would take this unidentified third country to respond."); *Saadhom v. Bondi*, No. 2:26-cv-00425-TL, 2026 WL 698786, at *5 (W.D. Wash. Mar. 12, 2026) ("Respondents assert that they have submitted travel document requests to Canada, Panama, and Costa Rica, but they are silent as to whether they have heard back from those countries … they did not send any such requests to any third countries until December 17, 2025.  Lastly, Respondents admit there is no specific date of anticipated removal, despite his final removal order having been entered over nine months ago.  These efforts do not make removal reasonably foreseeable.") (quotations omitted).

Additionally, upon Respondents' potential identification of a third country for removal, Petitioner could raise a fear-based claim for removal to that country, further extending the timeline for removal.  *See A.A.M.*, 2026 WL 1099063, at *7 ("Respondents do not provide sufficient information to establish that if Petitioner is granted withholding, his removal is reasonably foreseeable because Respondents provide no information about how long it may take to identify a new country, receive approval from such country and obtain travel documents for Petitioner.  This timeline may be extended further if Petitioner raises a fear-based claim for removal to that newly identified country.").

Thus, as Petitioner has been detained for a considerable length of time and shown that there is no significant likelihood of removal in the reasonably foreseeable future and Respondents have provided no rebuttal thereto, Petitioner's continuing detention is unlawful.  *See Saadhom*, 2026 WL 698786, at *5.  Next, the undersigned will address the appropriate remedy.

**B.    Remedy**

Petitioner asserts he has no record of criminal arrests or convictions.  (Doc 1-3 at 8).  Respondents do not contest this nor provide any argument or factual proffer regarding any arrests, convictions, risk of flight, or danger to the community.  *See* (Doc. 9).  In light of these facts, and as the undersigned has found that Petitioner's detention is no longer authorized by statute, the undersigned will recommend that Petitioner be released immediately, pursuant to the conditions set forth in 8 U.S.C. § 1231(a)(3) and (7), which "provides the process for supervision of noncitizens

9

who are released from detention because they were not removed within the 90-day removal period." *See A.A.M.*, 2026 WL 1099063, at *8 (finding that petitioner be immediately released).

Respondents concede that Petitioner "may be entitled to release" and do not provide any argument in opposition to release, requesting that "such relief be limited to release in accord with the regulations." (Doc. 9 at 3). Further to the analysis regarding the appropriate relief, the record shows no arrests, convictions, or altercations. In *Vishal*, another judge of this Court found that petitioner's two altercations while in custody did not justify his detention, and any concern regarding safety could be addressed through conditions of supervision imposed on petitioner upon his release. *See Vishal*, 811 F. Supp. 3d at 1186. Here, the record presents a yet stronger rationale for Petitioner's immediate release under supervision.

### C. Third Country Removal

Lastly, the undersigned will recommend that Respondents be enjoined and restrained from removing Petitioner to any third country without meaningful notice and an opportunity to assert a fear-based claim. *See Vishal*, 811 F. Supp. 3d at 1187 (citing cases and finding that "[m]ultiple courts have found the government's third country removal policy violates due process and is contrary to Ninth Circuit precedent"); *A.A.M.*, 2026 WL 1099063, at *8 ("Joining numerous other courts, and the District Judge's prior determination in this case, the undersigned finds that ICE's policy for third-country removals is incompatible with Ninth Circuit law and violates due process because it currently provides little to no notice of the country to which a noncitizen is to be removed and no meaningful opportunity to raise a fear-based claim.")

### V. Conclusion and Recommendation

Accordingly, IT IS HEREBY RECOMMENDED that:

1. The petition for writ of habeas corpus (Doc. 1) be GRANTED;

2. Respondents be ORDERED to release Petitioner immediately under conditions prescribed pursuant to 8 U.S.C. § 1231(a)(3) and (7), as well as 8 C.F.R. § 241.5;

3. Respondents be PERMANENTLY ENJOINED AND RESTRAINED from removing Petitioner to a third country unless Respondents adhere to the following procedures:

     a.  provide Petitioner and his counsel notice and a minimum of ten (10) days to raise a fear-based claim for protection prior to removal;

     b.  if Petitioner demonstrates reasonable fear of removal to the third country, Respondents must move to reopen Petitioner's removal proceedings;

     c.  if Petitioner is not found to have demonstrated a reasonable fear of removal to the third country, Respondents must provide a meaningful opportunity, and a minimum of 15 days for Petitioner to seek reopening of his immigration proceedings;

4.  In the event Petitioner does assert a fear-based claim for relief from removal, Respondents be ENJOINED AND RESTRAINED from removing Petitioner to the third country without first providing him a meaningful opportunity to be heard on his fear-based claim before an immigration judge in compliance with due process;

5.  Respondents be ORDERED to file, within five (5) days of the date of the Court's order, a status report confirming that Petitioner has been released; and

6.  The Clerk of the Court be DIRECTED to enter judgment for Petitioner and to close this case.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). **Within seven (7) days** after being served with these findings and recommendations, the parties may file written objections with the Court. Although this objection period is shorter than provided by Local Rule, such an adjustment is warranted given the nature of Petitioner's harm, the finding of a violation of the U.S. Constitution by Respondents, and the fact that the parties have extensively briefed the issues involved. *See United States v. Barney*, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) ("The court may require a response within a shorter period if exigencies of the calendar require."). Any objections filed should be captioned, "Objections to Magistrate Judge's Findings and Recommendations" and shall not exceed 15 pages without leave of Court and good cause shown. The Court will not consider exhibits attached to the Objections. To the extent a party wishes to refer to any exhibit(s), the party should reference the exhibit in the record by its CM/ECF document

and page number, when possible, or otherwise reference the exhibit with specificity.  Any pages filed in excess of the 15-page limitation may be disregarded by the District Judge when reviewing these findings and recommendations under 28 U.S.C. § 636(b)(l)(C).

The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:    **June 29, 2026**

UNITED STATES MAGISTRATE JUDGE